UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
10-22858-CIV-HOEVELER

**BAPTIST HOSPITAL OF
MIAMI, INC., et al.,**

    Plaintiffs,

v.

**WELLCARE OF FLORIDA, INC., et al.,**

    Defendants.
_____/

<u>ORDER AND REASONS</u>

BEFORE the Court is the plaintiffs' motion for remand. The motion is fully briefed and ready for a decision. For the reason that follow, the motion for remand is granted.

<u>Background</u>

The plaintiffs are several South Florida hospitals, collectively referred to as "Baptist Hospitals" or "Baptist" (the nomenclature used by the parties). The defendant is Wellcare of Florida, Inc., a provider of government-sponsored HMO Medicaid insurance to Florida residents. In years past, Baptist Hospitals provided emergency healthcare services, and in some cases, non-emergency follow-up services, to Wellcare's Medicaid HMO Plan Members ("Plan Members"). It is undisputed that Wellcare is obligated to reimburse Baptist for the services Baptist rendered to Wellcare Plan Members, the only question in this case is: What is the correct reimbursement rate?

1

Ordinarily, Medicaid providers such as Wellcare create partnerships with a "network" of hospitals and physicians, who are then under contract to provide medical services to Plan Members at pre-scheduled prices. Such agreements would, logically, greatly reduce the opportunity for disputes over reimbursement rates. In years past, Baptist Hospitals participated in Wellcare's provider network as a "contract provider." Pl.'s Compl. ¶ 14. Baptist left Wellcare's provider network in 1999, however, and since then has been an outsider, known under Florida law as a non-contract healthcare provider. As a result, Wellcare's Plan Members do not receive insurance coverage for visits to Baptist Hospitals except in two circumstances. The first is when a Wellcare Plan Member shows up at a Baptist Hospital emergency room for urgent care. <u>Id.</u> at ¶ 17. By law, Baptist is bound to provide the necessary care, and is entitled to seek reimbursement from the patient's insurer at the statutory default rates for non-contract healthcare providers, set by § 641.513(6) of the Florida Statutes.

The second circumstance is when a Plan Member who presents at Baptist for urgent care then requires subsequent hospitalization on a non-emergency basis. <u>Id.</u> In these cases, insurance coverage is not automatic. It depends on Wellcare's authorization. But it is undisputed that, at least in some cases, Wellcare gave authorization. Baptist claims that Wellcare should be required to pay for the fair value of the pre-authorized, non-emergency services Baptist rendered, based on ordinary principles of equity

and contract law.

In this lawsuit, Baptist claims Wellcare underpaid in both circumstances; that is: (1) for the emergency care that Baptist provided to Wellcare Plan Members, and (2) for the pre-authorized, non-emergency follow-up. Baptist filed a two-count complaint in state court July 15, 2010. In Count I, Baptist asserts a claim for statutory reimbursement under § 641.513(6) of the Florida Statutes, which requires Wellcare to reimburse out-of-network hospitals for emergency services according to the "Medicaid rate" (a term of art whose meaning is disputed). In Count II, Baptist asserts a claim for breach of an implied contract between Baptist and Wellcare, based on Baptist's allegation that Wellcare never paid for the reasonable value of the non-emergency care that Wellcare authorized.[1]

On August 6, 2010, Wellcare timely removed the case to federal court on the basis of 28 U.S.C. §§ 1441 and 1446, claiming that federal Medicaid laws and regulations dictate the reimbursement rates for "non-contract" emergency healthcare services. In particular, Wellcare stresses that, although the plaintiffs purport to seek reimbursement under § 641.513(6), the reimbursement rate they seek exceeds the federal maximum allowed by the Deficit Reduction Act of 2005 ("DRA"), which amended Section 1932(b)(2) of the Social Security Act and affected Medicaid reimbursement rates

---

[1] The breach-of-implied-contract claim in Count II is purely a state-law claim and is irrelevant to the jurisdictional issues. It will not be discussed further.

3

for out-of-contract emergency services as of January 1, 2007. Thus, Wellcare contends that Baptist's reimbursement claim in Count I of the complaint either, (1) raises a substantial and disputed issue of federal law, and/or (2) is completely preempted by the DRA. If either position is correct, then the lawsuit involves a federal ingredient that would transform the case into one "arising under" federal law, giving this Court original jurisdiction.

In response, Baptist moved for remand, arguing that its claim in Count I merely seeks to collect the default rates mandated by Fla. Stat. § 641.513, no more, no less. Baptist adds that the Court need not determine whether certain terms in § 641.513(6) are consistent with, or defined by, federal mandates, nor whether federal law imposes a reimbursement cap that prevents the plaintiffs from winning, because these are merely federal-law defenses to liability and cannot confer federal jurisdiction over the complaint.

I.

"A removing defendant bears the burden of proving proper federal jurisdiction." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) (citing Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002)). Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court. Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). In determining the existence of federal jurisdiction under 28 U.S.C. § 1331, the Court must look to the well-pleaded

complaint alone. <u>Louisville & Nashville Railroad Co. v. Mottley</u>, 211 U.S. 149, 152 (1908). Although Baptist has not asserted any claims under federal law, Wellcare argues that federal jurisdiction is nevertheless proper under the "substantial federal question" doctrine. Under this variant of § 1331 jurisdiction, a federal court has jurisdiction over a state-law claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Adventure Outdoors</u>, 552 F.3d at 1296.

II.

The only aspect of the plaintiffs' Complaint that arguably implicates federal law is the reimbursement claim in Count I. In pertinent part, the plaintiffs allege that:

> 23. Pursuant to Florida Statutes Section 641.513(6), Wellcare Group must reimburse the Baptist Hospitals for emergency services and care at the "Medicaid rate."
>
> 24. The appropriate Medicaid rate is the exempt Medicaid rate established by the State of Florida Agency for Health Care Administration ("AHCA") for services provided by each of the Baptist Hospitals.
>
> 25. Despite notice and demand, Wellcare Group has failed to pay the exempt Medicaid rate for emergency services and care provided by the Baptist Hospitals.
>
> 26. Wellcare Group's failure to properly reimburse the Baptist Hospitals for emergency service and care violates Florida Statute Section 641.513(6)(d).

5

Compl. ¶¶ 23-26. The plaintiffs' reimbursement claim does not reference federal law, and the plaintiffs purport to rely exclusively on Florida law. Specifically, the plaintiffs invoke § 641.513(6), which governs the rate that Florida hospitals can charge for emergency services to Medicaid recipients who subscribe to non-contract HMO plans:

> (6) Reimbursement for services under this section provided to subscribers who are Medicaid recipients by a provider for whom no contract exists between the provider and the health maintenance organization shall be the lesser of:
>
> (a) The provider's charges;
>
> (b) The usual and customary provider charges for similar services in the community where the services were provided;
>
> (c) The charge mutually agreed to by the entity and the provider within 60 days after submittal of the claim; or
>
> (d) The Medicaid rate.

Fla. Stat. § 641.513(6).[2] Of the four regulatory pricing options

---

[2] Both sides seem to implicitly accept that § 641.513(6)(d) gives Baptist the private right to sue Wellcare for a reimbursement deficiency. While this conclusion appears to be sound, it is hardly unassailable. See, e.g., Merkle v. Aetna Health, Inc., 2005 WL 6151455, *6 (S.D. Fla. April 27, 2005) ("the issue of whether Plaintiffs have a private right of action under § 641.513 is a close question."). With respect to a private right of action under § 641.513(5), which is similar to § 641.513(6), courts have come out on both sides of the question. See Neighborhood Health Partnership, Inc. v. Peter F. Merkle M.D., 8 So. 3d 1180, 1182 (Fla. 4th DCA 2009) ("§ 641.513(5) affords the providers a private right of action against the HMOs"); Mariners Hosp. v. Neighborhood Health Partnership, Inc., 2004 WL 3201003, *4 (S.D. Fla. March 31, 2004) ("Plaintiff's Complaint fails to state a claim because Fla. Stat. § 641.513(5) does not provide for a private cause of

6

for "out-of-network" emergency services, Hospitals are entitled to recover the least expensive option. Id. Anyone who has seen an emergency-room invoice will easily surmise that, of the possible pricing methods in § 641.513(6)(a)-(d), the "Medicaid rate" will almost invariably be the "lesser of" both the "provider charges" under option (6)(a), and the "customary provider charges" under option (6)(b). Indeed, in the absence of negotiated rates with insurance providers, the "sticker price" of emergency room services is stratospheric. Pricing option (6)(c) contemplates a mutual pricing agreement between the hospital and insurer, and therefore will seldom be the subject of reimbursement litigation. Thus, disputes such as this one orbit around the calculation of the "Medicaid rate," which is pricing option (6)(d).[3] Baptist claims Wellcare refuses to pay the Medicaid rate under § 641.513(6)(d), and seeks more reimbursement. Wellcare counters that, regardless of the state-law label Baptist places on its claim, Medicaid emergency services reimbursement rates are defined by, and preempted by,

---

action."). Suffice it to say, if there is no private right of action under § 641.513(6), then the plaintiffs' reimbursement claim will obviously be dismissed in state court. But that is for the courts of Florida to decide. See, e.g., Batchelor v. Deloitte & Touche, LLP, 2009 WL 1255449, *5 (S.D. Fla. April 27, 2009) (Hoeveler, J.) (remanding where private right of action theory was plausible under state law).

[3] According to Baptist, "[t]he appropriate Medicaid rate is the *exempt Medicaid rate* established by the State of Florida Agency for Health Care Administration ('AHCA')," id. p. 23-24 (emphasis added). AHCA is permitted to and does set the rates, provided, of course, Florida's rates do not exceed the rate calculation allowed by federal law.

7

federal law, and in particular the DRA.[4]

A.

Wellcare's first argument implicates the "substantial federal question" doctrine, which the Supreme Court prominently discussed in <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, 545 U.S. 308, 125 (2005). In <u>Grable</u>, the high court considered whether a state-law quiet title claim that implicated a federal tax statute was "arising under" federal law. The facts were that in 1994, the IRS seized Grable's property to satisfy a tax deficiency. The IRS then sold the property at a tax sale to Darue Engineering. Although Grable received *actual* notice of the tax seizure by certified mail, the relevant tax statute, 26 U.S.C. § 6335(a), required that the seizure notice be "given" personally to the owner of the property, which the IRS had not done. Five years

---

[4] It appears from the written submissions that Wellcare already paid Baptist what Wellcare believes to be the correct amount of reimbursement, as calculated by the DRA's method of subtracting from the Florida Medicaid rate the costs of graduate medical education. <u>See</u> 42 U.S.C. § 1396u-2(b)(2)(D) ("Emergency services furnished by non-contract providers--Any provider of emergency services that does not have in effect a contract with a Medicaid managed care entity that establishes payment amounts for services furnished to a beneficiary enrolled in the entity's Medicaid managed care plan must accept as payment in full no more than the amounts (less any payments for indirect costs of medical education and direct costs of graduate medical education) that it could collect if the beneficiary received medical assistance under this subchapter other than through enrollment in such an entity. In a State where rates paid to hospitals under the State plan are negotiated by contract and not publicly released, the payment amount applicable under this subparagraph shall be the average contract rate that would apply under the State plan for general acute care hospitals or the average contract rate that would apply under such plan for tertiary hospitals.").

8

after the tax sale, Grable sued Darue Engineering in Michigan court, claiming superior title to the disputed property because the IRS never provided proper notice of seizure. Grable, 545 U.S. at 310-11. Darue Engineering removed the case to federal court, because the plaintiff's claim of superior title depended on an interpretation of the "notice" requirement in the IRS statute. Id. In concluding that the plaintiff's state-law claim raised a substantial issue of federal law, the Supreme Court found it significant that, "the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." Id. at 315.

A year later in Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 682-83 (2006), the Supreme Court elaborated on the factors that had supported removal jurisdiction in Grable: The property dispute centered on the action of a federal agency and its compatibility with a federal statute; the resolution of the federal issue was dispositive of the case; the interpretation of the IRS statute would be controlling in numerous other cases; and the federal aspect of Grable involved a "nearly pure issue of law." Id. By contrast, in denying federal jurisdiction in Empire Healthchoice, the Court noted the dispute was between private parties, the federal issue was not dispositive, and the nature of the state claim was "fact-bound and situation-specific." Id. at

9

700-701.[5]

Applying these principles, it is clear that the federal aspect of Medicaid law in this case does not present a substantial federal issue that would give this Court original jurisdiction over Baptist's state-law reimbursement claim. The "meaning" of federal law is not expressly at issue, but rather, only the meaning of the term "Medicaid rate" as used in § 641.513(6)(d). The case is between private parties and does not implicate the actions of any federal agency. Like the dispute in Adventure Outdoors, Inc. v. Bloomberg, 522 F.3d 1290 (11th Cir. 2008), this case is "unlikely to impact the federal government's interests or its ability to vindicate those interests through administrative action." Id.,522 F.3d at 1300; cf. In re Zyprexa Products Liability Litigation, 2009 WL 691942, *3 (E.D.N.Y March 11, 2009) (citing In re Zyprexa Products Liability Litigation, 451 F. Supp. 2d 458 (E.D.N.Y. 2006) (accepting jurisdiction of Medicaid-related claims under Grable standard when "[t]he national nature of the Zyprexa litigation is illustrated by the present federal efforts to settle all claims of

---

[5] The Eleventh Circuit relied on Empire Healthchoice in Adventure Outdoors, Inc. v. Bloomberg, 522 F.3d 1290 (11th Cir. 2008), another instructive case involving removal jurisdiction. The plaintiff in Adventure Outdoors brought a state-law libel case, in which the Georgia jury would have to interpret and apply federal gun law. The Eleventh Circuit wrote that, "[t]o be sure, the jury would have to apply federal law to reach its decision. But as the Supreme Court explained in Grable, the federal courts have rejected the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." Id. at 1300 (internal quotations omitted) (citing Grable, 545 U.S. at 313).

the United States and the fifty states, as well as by the combined resolution of the fifty state Medicare liens and federal Medicare liens for individual tort recoveries for personal injury, demonstrating that uniformity in treating federally-based claims brought in this multidistrict litigation is desirable.").

Furthermore, the supposed federal question--*i.e.*, whether federal law caps Baptist's reimbursement at an amount lower than what Baptist hopes to recover--is not even the kind of purely legal question that would be dispositive of Count I, because, either way, Baptist is still claiming that it wasn't paid the default rate owed under § 641.513(6)(d), however the rate-ceiling is calculated. In reality, Wellcare has simply asserted what amounts to a federal-law defense to the amount of damages it may owe; a federal-law defense, however, even one that limits the remedy available to the plaintiff, does not make a case removable. See City of Chicago v. Comcast Cable Holdings, LLC, 384 F. 3d 901, 905 (7th Cir. 2004) (federal pricing caps can be applied in state court and are not a basis for removal). This rule has been rooted in our legal culture for more than a century, ever since the case of a railroad company that gave a Kentucky couple a lifetime rail-pass as consideration for settling their tort claim involving a train wreck. Three decades later, Congress forbade railroads from offering free rides, and the railroad revoked the lifetime pass. The couple sued the railroad in federal court for breaching the settlement contract, and the only disputed issue was the interpretation of the

11

Congressional statute--that is, could the couple's rail-pass legitimately be viewed as prohibited "free transportation"? After all, the couple arguably "paid" for the pass by forgoing their tort claim thirty years earlier. The Supreme Court never reached the merits, however, holding that a claim under state law does not "arise under" federal law even when the only contested issue is the effect or interpretation of a federal statute *that forms part of a defense*, as opposed to a federal statute that is essential to the plaintiff's claim. Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908). When the Grable Court revisited the Mottley rule a century later, the question was simply whether removal jurisdiction can exist when the "federal question" to be answered is embedded in a federal regulation that does not itself allow for private enforcement. Grable held that, in rare cases, the plaintiff's case is federal even in the absence of a federal right of action. But even under this standard, the federal element still has to be part of the plaintiff's case; it cannot simply be part of a defense to liability. On remand, Wellcare is free to argue the rates set by the AHCA for emergency services rendered after 2006 are higher than the DRA allows, as appears to be the case.

B.

Wellcare's argument about preemption is also unsuccessful. Even accepting that the DRA adds content to the definition of "the Medicaid rate," as that term is used in § 641.513(6), if that fact alone were sufficient to convert Baptist's lawsuit into a federal

12

one, then any statute preempting state law would allow removal. But that is not the law, as evidenced by the distinction between federal laws that "completely preempt" state law (and thereby form the basis for removal jurisdiction), compared to federal laws that only provide so-called "ordinary" preemption (which may be asserted as defenses in state court). In <u>Geddes v. American Airlines, Inc.</u>, 321 F. 3d 1349 (11th Cir. 2003), the court of appeals considered the case of an airline technician who sued American Airlines in state court for negligence and defamation. American Airlines removed the case to federal court, claiming the Railway Labor Act ("RLA"), 45 U.S.C. § 184, completely preempted the plaintiff's state-law tort claims and, as a result, provided the basis for removal jurisdiction. The district court accepted jurisdiction, applied the RLA, and dismissed the plaintiff's claims on pre-trial motions. On appeal, however, the Eleventh Circuit found fault in the lower court's preemption analysis, explaining that:

> Preemption is the power of federal law to displace state law substantively. The federal preemptive power may be complete, providing a basis for jurisdiction in the federal courts, or it may be what has been called "ordinary preemption," providing a substantive defense to a state law action on the basis of federal law. More specifically, ordinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law. However, a case may not be removed to federal court on the basis of a federal defense, including that of federal preemption.

<u>Id.</u> at 1352-53 (citations and footnotes omitted).

13

The inquiry under the complete preemption doctrine is whether federal regulation is so prevalent and controlling in a certain area of the law that it occupies the entire field of regulation, leaving no room for state law. See Anderson v. Elec. Data Sys. Corp., 11 F.3d 1311, 1315 (5th Cir. 1994) ("Congress may so completely preempt a particular area that any civil complaint raising this *select group* of claims is necessarily federal in character. . . .") (emphasis added). In the present situation, it strains reason to think the DRA (or any other aspect of Medicaid law) occupies the entire field of civil claims for Medicaid reimbursement simply because federal law defines the *maximum* rate for certain services, under certain circumstances. See, e.g., Hood v. AstraZeneca Pharmaceuticals, LP, 744 F. Supp. 2d 590, 605 (N.D. Miss. 2010) ("Defendants failed to point to any sections, or even a single section, of federal Medicaid law that would demonstrate complete preemption.").

Additionally, the Geddes panel wrote that: "The Supreme Court has cautioned that complete preemption can be found only in statutes with 'extraordinary' preemptive force. . . . Moreover, that 'extraordinary' preemptive force must be manifest in the clearly expressed intent of Congress." Id., 321 F.3d at 1352. Wellcare has not established that federal law creates the exclusive cause of action for healthcare providers to sue for emergency services reimbursements, or, for that matter, that federal law

creates any private right of action to seek reimbursements.[6] Thus, applying the Geddes standard, it is clear to the Court that Wellcare has not established any aspect of federal law that *completely* preempts Florida law regarding emergency-services reimbursement such that this case is removable.

III.

As stated above, Wellcare has not identified an embedded federal issue of such importance that this case belongs in federal court. The factors discussed in Grable and Adventure Outdoors indicate that this case does not belong in the "special and small category of cases" that warrant federal jurisdiction over a well-pleaded state-law claim. See Empire HealthChoice, 547 U.S. at 700 (internal quotations omitted). Nor has Wellcare established that complete preemption applies. Based on the foregoing analysis, it is hereby:

**ORDERED AND ADJUDGED:**

1. The plaintiffs' motion for remand is granted.

---

[6] Wellcare draws attention to at least one decision from this district that, according to Wellcare, recognizes a federal private right of action to sue healthcare providers for over-billing Medicaid beneficiaries, under the balanced-billing provision of the Medicaid statute, 42 U.S.C. § 1396a(a)(25)(C). See Mallo v. Public Health Trust of Dade County, 88 F. Supp. 2d 1376 (S.D. Fla. 2000). But in Mallo, the hospital was an agency of the State of Florida, and the district court viewed the private-right-of-action question through the lens of 42 U.S.C. § 1983 and Wilder v. Virginia Hosp. Assoc., 496 U.S. 498 (1990). For that reason, among others, Mallo has little bearing on this case.

2. Wellcare's removal of this case was not objectively unreasonable. Therefore, the plaintiffs' motion to recover attorney's fees under 28 U.S.C. § 1447(c) is denied.

3. The Clerk of the Court is directed to remand this case to the Circuit Court of the Eleventh Judicial Circuit of Miami-Dade County.

4. This case is closed. All pending motions are denied as moot.

**DONE AND ORDERED** in Miami, Florida, May 19, 2011.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE